Dear Chief Theriot:
This office is in receipt of your request for an opinion of the Attorney General in regard to your authority over hiring and firing of police officers for your department. You indicate that on February 20, 2002, upon your recommendation, an individual was hired as a part-time police officer for your department. On July 15, 2002 you recommended that he be placed on full time status, but the Mayor and Board of Aldermen stated they would like to place him on a 90-day probationary period, to which you agreed. On July 15, 2002 he was placed on full-time status with the department contingent upon a 90-day probationary period." Thereafter, on October 15, 2002, despite you advising the Mayor and Board that you wanted to keep the officer as a full-time employee, they unilaterally terminated the employment on a full-time status, and he was returned to part-time status although he had successfully completed the probationary period. You declare this was "without cause, without my recommendation, and without receiving any medical and retirement benefits."
You ask the following questions:
 1. Can a Mayor and Board of Aldermen place a police employee on probation after the employee worked 4 months (900+ hours) on a part-time status, when the elected Chief of Police put said employee up for full-time status inasmuch as the Town employed the officer already for over 90 days as a part-time employee?
 2. Can a Mayor and Board of Aldermen after placing said employee on a 90-day probationary period, unilaterally dismiss the full-time status of said employee without the recommendation of the elected Chief of Police or department head?
 3. Does the Mayor and Board of Aldermen have the authority to dismiss a probationary employee without the recommendation of the elected Chief of Police, after the Chief of Police approved said officer's probationary period?
This office has observed on numerous occasions that the elected chief of police does not have unilateral authority to hire and fire police personnel, although this office has also recognized that the governing authority cannot act without the recommendation of the elected Chief of Police as to hiring and firing.
Applying this concept to the facts as we understand them, there was no unilateral action on anyone's part. As elected Chief of Police, upon your recommendation and agreement, the officer herein was placed on full-time status for a 90-day probationary period. Therefore, it would appear this was all done in accordance with your agreement, and the commitment for full-time employment was only for a 90 day probationary period. We cannot conclude that the governing authority acted arbitrarily when it determined at the end of that period to return the officer to his prior part-time status as there was no assurance to any more full-time employment after the 90 day period.
We believe the probationary period left the matter up to the governing authority as to the continuation of the full-time employment, and we must conclude this could in part involve the question of necessary funding required by increasing the hours of employment.
Therefore, in answer to your questions, we do not find that the governing authority placed the officer on probation, but acted by agreement with you, Chief of Police. Also, we do not find that there was any agreement after the probationary period that the full-time employment would be continued. Since the full-time employment was an agreed upon probationary period, the termination was not a dismissal without your recommendation, but appears to be a predetermined arrangement by all parties for only 90 days.
We hope this sufficiently responds to your inquiry.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ____________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr
DATE RELEASED: January 23, 2003